**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, HISCOX SYNDICATE 33, | : : | |
| | : | Case No. _____ |
| Plaintiff, | : : | |
| v. | : : | |
| AMTRUST FINANCIAL SERVICES, INC., | : : | |
| | : : | |
| Defendant. | : | |

**COMPLAINT FOR DECLARATORY RELIEF**

For its Complaint against Defendant AmTrust Financial Services, Inc. ("AmTrust"), Plaintiff Certain Underwriters at Lloyd's, London, Hiscox Syndicate No. 33 ("Hiscox") states as follows:

**NATURE OF THE ACTION**

1.      This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332.

**PARTIES**

2.      Hiscox is a syndicate consisting of entities authorized to insure risks at Lloyd's of London.  The insurance policies at issue in this action were underwritten by Syndicate No. 33. The members of Syndicate No. 33 are all foreign corporations with their principal places of business located outside the United States.

3.      Upon information and belief, AmTrust is a Delaware corporation with its principal place of business in New York, New York.  The policies at issue in this action were issued to AmTrust in New York.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Hiscox and Defendant, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

5.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district or 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### The Excess Policy

6.     Hiscox issued an excess insurance policy—Policy No. B0507 N17FA23130, later amended to become Policy No. B0509 FINFW 1800152 (the "Excess Policy")—to AmTrust effective for the period from October 21, 2017 to November 29, 2018 (the "Policy Period").  A copy of the Excess Policy is attached hereto as "Exhibit 1."

7.     Subject to its terms, conditions, limitations, exclusions, and endorsements, the Excess Policy affords up to $10 million of coverage excess of $15 million in underlying insurance and a $5 million retention.

8.     The Excess Policy states that it shall be governed and construed in accordance with the law of New York.

9.     Except as otherwise provided in the Excess Policy, the Excess Policy is subject to the same terms, conditions, limitations, exclusions, and endorsements as are contained in the primary policy issued to AmTrust by Indian Harbor Insurance Company for the period of October 21, 2017 to November 29, 2018 (the "Followed Policy").  A copy of the Followed Policy is attached hereto as "Exhibit 2."

2

10.     Both the Followed Policy and the Excess Policy are claims-made policies that only afford coverage for "Claims" first made during the Policy Period.

11.     The Followed Policy provides directors and officers liability coverage under the following insuring agreements in Section I of the Followed Policy:

Insuring Agreement (A): The Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy Period for a Wrongful Act, except for Loss which the Company is permitted or required to pay on behalf of the Insured Persons as indemnification.

Insuring Agreement (B): The Insurer shall pay on behalf of the Company Loss resulting from a Claim first made against the Insured Persons during the Policy Period for a Wrongful Act to the extent the Company is required or permitted to pay on behalf of the Insured Persons as indemnification.

Insuring Agreement (C): The Insurer shall pay on behalf of the Company Loss resulting solely from any Securities Claim first made against the Company during the Policy Period for a Wrongful Act.

Insuring Agreement (D): The Insurer shall pay on behalf of the Insured Persons Defense Expenses resulting from an Interview, except for Defense Expenses which the Company is permitted or required to pay on behalf of the Insured Persons as indemnification.

Insuring Agreement (E): The Insurer shall pay on behalf of the Company Defense Expenses incurred by the Insured Persons resulting from an Interview to the extent the Company is required or permitted to pay on behalf of the Insured Persons such Defense Expenses.

Insuring Agreement (F): The Insurer shall pay on behalf of the Company Defense Expenses incurred by the Company resulting from any Investigation Demand first made during the Policy Period.

12.     Section II(C) of the Followed Policy defines "Claim" in relevant part as "any civil, criminal, administrative or regulatory proceeding commenced by: (a) service of a complaint or similar pleading."

13.     "Wrongful Act" is defined in Section II.(U) of the Followed Policy in relevant part as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an Insured Person while acting in his or her capacity as such or due to his or her status as such.".

14.     "Loss" is defined in Section II.(O). of the Followed Policy as "damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) that any Insured is legally obligated to pay and Defense Expenses, including that portion of any settlement which represents the claimant's attorneys' fees." Section II.(O) further provides that Loss does not include, among other things, (1) any amount which is uninsurable under the laws pursuant to which the Followed Policy is construed; and (2) any amount which represents or is substantially equivalent to an increase in the consideration paid, or proposed to be paid, by the Company in connection with its purchase of any securities or assets of any person, group of persons, or entity.

15.     The Followed Policy (and the Excess Policy by virtue of its incorporation of the Followed Policy's terms, conditions, limitations, exclusions, and endorsements) contains provisions that establish when a "Claim" is deemed first made and exclusions that reinforce the fact that the Followed Policy and Excess Policy afford coverage only for "Claims" first made during the Policy Period.

16.     Section VI.(B). of the Followed Policy (the "Single Claim Provision") states that all "Claims" arising from the same "Interrelated Wrongful Acts" shall be deemed to constitute a single "Claim" and shall be deemed to have been made at the earliest of the time at which the earliest such "Claim" is made or deemed to have been made pursuant to Section VI.(A). of the Followed Policy.

17.     "Interrelated Wrongful Act" is defined in Section II.(K). of the Followed Policy to mean any "Wrongful Acts" based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions, or events.

18.     Endorsement No. 5 to the Followed Policy (the "Prior Act Exclusion") provides that no coverage will be available for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, or Wrongful Act committed or allegedly committed prior to October 21, 2017.

19.     Likewise, the Excess Policy includes a Retroactive Date Inception Endorsement that excludes any Loss or Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving: (1) any Wrongful Act actually or allegedly committed or any conduct actually or allegedly undertaken prior to 12:01 a.m. Local Time on October 21, 2017; (2) any other Wrongful Act occurring on or subsequent to the date stated in (1) above which, together with a Wrongful Act occurring prior to such date, would constitute Interrelated Wrongful Acts; or (3) any other conduct occurring on or subsequent to the date stated in (1) above, together with conduct occurring prior to such date, have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

20.     Endorsement No. 6 to the Followed Policy (the "Specific Matter Exclusion") provides that no coverage shall be available for any Loss in connection with: (1) certain Claims, notices, events, investigations or actions (hereinafter "Events") set forth in Endorsement No. 6; (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any Event; or (b) any Claim arising from any Event; or (iii) any Wrongful Act, underlying facts, circumstances, acts or omissions in any way relating to any Event.  Endorsement No. 6 of the Followed Policy further provides that no coverage shall be available under the Followed Policy for any Loss in connection with: (A) any restatement, retraction, amendment or revision of in part or in whole: (1) any document or statement filed or submitted or required to be filed or submitted

5

with the Securities and Exchange Commission or any other similar federal, state or local agency; or (ii) any written or oral statement made regarding the assets, revenues, sales or financial conditions of the Company, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Event or the resolution of said Event; and (B) any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an Interrelated Wrongful Act, regardless of whether or not such Claim involved at the same or different Insureds, the same or difference legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

21.    Section III.(B).(1). of the Followed Policy (the "Prior Litigation Exclusion") provides that no coverage shall be available for any Claim made against an Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event, or Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration against any Insured which was brought prior to the Pending and Prior Litigation Date (i.e., October 21, 2017).

22.    Section III.(B). (2). of the Followed Policy (the "Prior Notice Exclusion") provides that no coverage shall be available for any Claim made against an Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act which, before the Inception Date of this Policy (i.e., October 21, 2017) was the subject of notice given under any other Management Liability Policy, Directors and Officers liability policy or similar policy.

23.    Endorsement No. 16 to the Followed Policy (the "Subsequent Act Exclusion") provides that no coverage will be available for any Claim based upon, arising out of, directly or

indirectly resulting from, in consequence of, or in any way involving any Wrongful Act committed or allegedly committed on or after November 29, 2018.

24.     Pursuant to Section II.(U). of the Followed Policy, both the Followed Policy and the Excess policy only provide coverage for Claims against an Insured for a Wrongful Act that is committed by an Insured in their capacity as such, that is, as a "Director or Officer" of AmTrust.

**The Derivative Actions Filed Prior to the Inception of the Excess Policy**

25.     AmTrust's directors (the "D&Os") have been sued in three derivative lawsuits that were filed prior to October 21, 2017—the date the Excess Policy incepted (the "Derivative Actions").

26.     In April 2015, Cambridge Retirement System ("Cambridge"), an AmTrust stockholder, commenced a derivative action in the Delaware Chancery Court on behalf of AmTrust against Barry Zyskind, George Karfunkel, Leah Karfunkel, Abraham Gilkowitz, Susan Fisch, Donald DeCarlo, and others.  A copy of the public redacted version of the Verified Amended Stockholder Derivative Complaint is attached hereto as "Exhibit 3."

27.     Cambridge alleged that the defendants breached their fiduciary duties to AmTrust by either usurping or permitting others to usurp a valuable corporate opportunity concerning the acquisition of Tower Insurance Group.

28.     In April 2017, David Shaev Profit Sharing Plan ("Shaev"), an AmTrust stockholder, commenced a derivative action in the Supreme Court of New York, New York against Barry Zyskind, Donald DeClaro, Susan Fisch, Abraham Gulkowitz, and others.  A copy of the Complaint is attached hereto as "Exhibit 4."

29.     Shaev alleged AmTrust's financial statements were erroneous, false, and misleading.

7

30.    In June 2017, another AmTrust stockholder, Pompano Beach Police & Firefighters Retirement System ("Pompano"), commenced a derivative action in the Delaware Chancery Court on behalf of AmTrust against Barry Zyskind, George Karfunkel, Leah Karfunkel, Abraham Gulkowitz, Susan Fisch, and Donald DeCarlo.   A copy of the Verified Second Amended Stockholder Derivative Complaint is attached hereto as "Exhibit 5."

31.    Pompano alleged that the defendants breached their fiduciary duties to AmTrust in connection with financial fraud that led to underreported revenues, income, and other important metrics and that resulted in the Company having to restate nearly three years' worth of financials in 2017.

## The Underlying Action

32.    On or about March 1, 2018, AmTrust announced that its controlling shareholders, the "Karfunkel-Zyskind Family" comprised of Barry Zyskind, George Karfunkel, and Leah Karfunkel, had negotiated a deal to take the Company private with the assistance of a private equity firm, Stone Point Capital, LLC.   After learning of the proposed go-private transaction and recognizing that their then-pending Derivative Actions would be moot after such transaction, Cambridge and Pompano both filed direct stockholder actions against AmTrust's directors and officers on June 4, 2018 and May 31, 2018, respectively.   In their direct actions, Cambridge and Pompano generally re-alleged the wrongdoing alleged in their Derivative Actions and challenged the proposed go-private transaction on the basis that the proposed purchase price was unfair and the special take-private committee failed to assign appropriate value to the Derivative Actions.

33.    AmTrust's shareholders voted to approve the deal on June 21, 2018, and the go-private transaction closed on November 29, 2018.  The direct actions filed in May and June 2018

were consolidated and are referred to herein as the "Underlying Action."  A copy of the Amended

Verified Consolidated Class Action Complaint is attached hereto as "Exhibit 6."

34.     The plaintiffs in the Underlying Action allege the defendants took advantage of the

downturn in stock price caused by the wrongdoing at issue in the Derivative Actions (and the

revelation thereof) to force through an improper go-private merger transaction that allowed the

defendants to reclaim complete ownership of AmTrust at below fair market value.  The plaintiffs

allege that the go-private transaction is the culmination of the Karfunkel-Zyskind Family's efforts

that started with the improper Tower Insurance Group transaction in 2014, continued with the

Company's misleading financial statements and restatements in early 2017, and ultimately allowed

the Karfunkel-Zyskind Family to purchase the Company's stock at below market value price that

benefitted the Family's interests above the other stockholders' interests.

### Hiscox's Coverage Position

35.     By letter dated September 24, 2019, Hiscox informed Defendant of its coverage

position with respect to the Underlying Action.  A copy of that coverage letter is attached hereto

as "Exhibit 7."

36.     Hiscox reserved all of its rights under the Policy and at law generally, and reserved

its rights to deny coverage for the Underlying Action on the following grounds:

(a)     The Underlying Action is based upon, arises out of, results from, and involves
alleged breaches of fiduciary duties related to the acquisition of Tower Insurance
Group and the underreporting of revenues, income, and other financial metrics
resulting in certain financial restatements that were the subject of the Derivative
Actions filed in 2015 and 2017.  As such, pursuant to the Followed Policy's Single
Claim provision, the Underlying Action and the Derivative Actions constitute a
single Claim deemed first made when the Derivative Actions were first made, that
is, in 2015 and 2017 prior to the inception of the Excess Policy, and the Excess
Policy consequently affords no coverage for the Underlying Action.

(b)     Coverage for the Underlying Action is precluded by the Followed Policy's Prior
Act Exclusion and the Excess Policy's Retroactive Date Inception Endorsement in
that it is based upon, arises out of, directly or indirectly results from, in consequence

of, or in any way involves wrongdoing and conduct that occurred prior to the date the Excess Policy incepted, October 21, 2017.  In this regard, the Amended Verified Consolidated Class Action Complaint in the Underlying Action devotes more than 40 pages to a detailed discussion of the wrongdoing and other conduct previously alleged in the Derivative Actions, and the plaintiffs allege this conduct was intended to lower the price of the Company below market value in an effort to help the Insureds profit from the eventual go-private transaction.

(c)     Coverage for the Underlying Action is precluded by the Followed Policy's Specific Matter Exclusion.  That Exclusion lists the Derivative Actions (as well as other securities lawsuits related to the same alleged wrongdoing), and the Underlying Action involves the same or at least related facts, circumstances, acts, and omissions underlying and at issue in the specifically excluded Derivative Actions.

(d)     Coverage for the Underlying Action is precluded by the Followed Policy's Prior Litigation Exclusion.  The Underlying Action is based upon, arises out of, results from, and involves facts, circumstances, situations, transactions, events, and Wrongful Acts underlying or alleged in the Derivative Actions that were brought prior to the Pending and Prior Litigation Date of October 21, 2017.

(e)     Coverage for the Underlying Action is precluded by the Followed Policy's Prior Notice Exclusion.  The Underlying Action is based upon, arises out of, results from, and involves facts, circumstances, situations, transactions, events, and Wrongful Acts underlying or alleged in prior Claims (the Derivative Actions) first made against the Insureds prior to October 21, 2017 and for which the Insureds have sought coverage under other prior insurance policies.

(f)     Both the Followed Policy and the Excess Policy provide coverage only for Claims against an Insured for a Wrongful Act that is committed by an Insured in their capacity as such, that is, as a Director or Officer of AmTrust.  Coverage for the Underlying Action is precluded to the extent Defendants have been sued for acts undertaken in their uninsured capacity as stockholders and purchasers of AmTrust.

(g)     Both the Followed Policy and the Excess Policy do not afford coverage for uncovered loss such as restitution or disgorgement of ill-gotten gains or any other sums that do not constitute covered or insurable Loss under the Policies or applicable law.

## <u>COUNT I – DECLARATORY JUDGMENT AS TO APPLICATION OF SINGLE CLAIM PROVISION</u>

37.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 36 of this Complaint as if fully set forth herein.

38.     An actual, present, and justiciable controversy exists concerning whether the Underlying Action and the Derivative Actions constitute a single Claim deemed first made when the Derivative Actions were made, that is, in 2015 and 2017 prior to the inception of the Excess Policy.

39.     Hiscox requests that the Court declare that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Single Claim Provision and, as a result, Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment.

## COUNT II – DECLARATORY JUDGMENT AS TO PRIOR ACT EXCLUSION

40.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 39 of this Complaint as if fully set forth herein.

41.     An actual, present, and justiciable controversy exists concerning whether the Prior Act Exclusion precludes coverage for the Underlying Action under the Excess Policy.

42.     Hiscox requests that the Court declare that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Prior Act Exclusion and, as a result, Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment.

## COUNT III – DECLARATORY JUDGMENT AS TO RETROACTIVE DATE INCEPTION ENDORSEMENT

43.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 42 of this Complaint as if fully set forth herein.

44.     An actual, present, and justiciable controversy exists concerning whether the Retroactive Date Inception Endorsement precludes coverage for the Underlying Action under the Excess Policy.

45.     Hiscox requests that the Court declare that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Retroactive Date Inception Endorsement and, as a result, Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment.

## COUNT IV – DECLARATORY JUDGMENT AS TO SPECIFIC MATTER EXCLUSION

46.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 45 of this Complaint as if fully set forth herein.

47.     An actual, present, and justiciable controversy exists concerning whether the Specific Matter Exclusion precludes coverage for the Underlying Action under the Excess Policy.

48.     Hiscox requests that the Court declare that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Specific Matter Exclusion and, as a result, Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment.

## COUNT V – DECLARATORY JUDGMENT AS TO PRIOR LITIGATION EXCLUSION

49.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 48 of this Complaint as if fully set forth herein.

50.     An actual, present, and justiciable controversy exists concerning whether the Prior Litigation Exclusion precludes coverage for the Underlying Action under the Excess Policy.

51.     Hiscox requests that the Court declare that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Prior Litigation Exclusion and, as a result Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment.

## COUNT VI – DECLARATORY JUDGMENT AS TO PRIOR NOTICE EXCLUSION

52.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 51 of this Complaint as if fully set forth herein.

53.     An actual, present, and justiciable controversy exists concerning whether the Prior Notice Exclusion precludes coverage for the Underlying Action under the Excess Policy.

54.     Hiscox requests that the Court declare that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Prior Notice Exclusion and, as a result Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment.

## COUNT VII – DECLARATORY JUDGMENT AS TO UNINSURED CAPACITY

55.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 54 of this Complaint as if fully set forth herein.

56.     An actual, present, and justiciable controversy exists concerning whether all or certain of the D&Os were sued in the Underlying Action for acts undertaken in an uninsured capacity.

57.     Hiscox requests that the Court declare that there is no coverage, in whole or in part, for the Underlying Action under the Excess Policy insofar as all or certain of the D&Os were sued in the Underlying Action for acts undertaken in an uninsured capacity.

## COUNT VIII – DECLARATORY JUDGMENT AS TO UNCOVERED LOSS

58.     Hiscox hereby adopts by reference the allegations contained in paragraphs 1 – 57 of this Complaint as if fully set forth herein.

59.     An actual, present, and justiciable controversy exists concerning whether all or certain damages sought in the Underlying Action are covered Loss under the Followed Policy, the Excess Policy, and/or at law.

60.     Hiscox requests that the Court declare that it is not obligated to indemnify Defendant for any portions of a settlement or judgment entered in the Underlying Action that constitute uncovered loss under the Followed Policy, the Excess Policy, and/or at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Hiscox prays that this Court enter an Order:

1.     declaring that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Single Claim Provision and, as a result, Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment;

2.     declaring that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Prior Act Exclusion and, as a result, Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment;

3.     declaring that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Retroactive Date Inception Endorsement and, as a result, Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment;

4.     declaring that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Specific Matter Exclusion and, as a result, Hiscox is not obligated to

indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment;

5.      declaring that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Prior Litigation Exclusion and, as a result Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment;

6.      declaring that there is no coverage for the Underlying Action under the Excess Policy by virtue of the Prior Notice Exclusion and, as a result Hiscox is not obligated to indemnify Defendant for any Loss it incurs in connection with the Underlying Action, including but not limited to defense costs, or for any settlement or judgment;

7.      declaring that there is no coverage, in whole or in part, for the Underlying Action under the Excess Policy insofar as all or certain of the D&Os were sued in the Underlying Action for acts undertaken in an uninsured capacity;

8.      declaring that Hiscox is not obligated to indemnify Defendant for any portions of a settlement or judgment entered in the Underlying Action that constitute uncovered loss under the Followed Policy, the Excess Policy, and/or at law;

2.      awarding Hiscox its costs, expenses, and attorney fees; and

3.      awarding Hiscox all other relief the Court deems just and equitable.

Dated:  Purchase, New York
           March 5, 2021

                                                     Yours, etc.

                                                     LITTLETON PARK
                                                     JOYCE UGHETTA & KELLY LLP


                                                     By:____/s/Bryon L. Friedman_____
                                                            Bryon L. Friedman, Esq. (BF-5752)
                                                            Robert L. Joyce, Esq. (RJ-2840)
                                                     4 Manhattanville Road, Suite 202
                                                     Purchase, New York 10577
                                                     (914) 417-3400
                                                     File No. 02900.00001

                                                     BAILEY CAVALIERI
                                                     10 W. Broad Street, Suite 2100
                                                     Columbus, Ohio  43215-3422
                                                     (614) 221-3155
                                                     Sabrina C. Haurin, Esq.
                                                     Keith A. Little, Esq.

                                                     *Attorneys for Plaintiff*